**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>**v.**<br><br>$11,676.00 IN U.S. CURRENCY, *et al.*,<br><br>**Defendants.** | **Civil No.** 22-1456 (FAB) |

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Claimant Fernando Gallardo ("Gallardo") moves to dismiss the United States of America (the "government")'s complaint for forfeiture *in rem* pursuant to Rule G(8)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"). (Docket No. 16.) In the alternative, he requests an evidentiary hearing to develop the factual record. Id. The government objects. (Docket No. 18.) For the following reasons, Gallardo's motion to dismiss and request for an evidentiary hearing is **DENIED.**

**II. Background**

Prior to 2022, Gallardo organized two fraud schemes. The first scheme involved defrauding the United States and Puerto Rico's joint state-federal unemployment insurance program. See Case No. 22-cr-120-1, Docket No. 136 at pp. 7-10. Gallardo

submitted fraudulent claims for unemployment insurance using the names of individuals who were not qualified to receive benefits. Id. at p. 7. Gallardo arranged for the benefit checks to be mailed to his address rather than to the named recipients, and he would then forge the checks to be payable to him. Id. In all, Gallardo stole over $205,000 through this scheme. Id. at p. 10.

In the second scheme, Gallardo represented himself as an attorney and offered immigration assistance to individuals unlawfully present in the United States. See Case No. 22-cr-121, Docket No. 104 at pp. 10-13. Under the guise of applying for work authorization for the individuals, Gallardo filed fraudulent Violence Against Women Act ("VAWA") petitions to the U.S. Citizenship and Immigration Services containing fabricated information. Id. Gallardo charged petitioners between $5,000 and $12,000 in exchange for work authorization cards obtained via the fraudulent VAWA petitions. Id. at pp. 11-12. Gallardo filed at least 136 fraudulent VAWA petitions for more than 100 different individual petitioners. Id. at p. 12.

On March 23, 2022, Gallardo was charged in two indictments, one for each scheme. (Case No. 22-cr-120-1, Docket No. 3; Case No. 22-cr-121, Docket No. 3.) The indictments contained multiple counts of mail fraud, wire fraud, money laundering, misuse of visas and social security numbers, and aggravated identity theft. Id.

After the indictments, Gallardo was arrested and Homeland Security officers executed a search warrant of his house in Carolina, Puerto Rico. (Docket No. 3 at p. 3; Case No. 22-cr-121, Docket No. 104 at p. 13.) During the search, the officers seized $11,676 in United States currency and nine iPhones - three iPhone 12's, one iPhone X, three iPhone 6's, one iPhone 5, and one iPhone 3 (the "*in rem* assets"). (Docket No. 3 at pp. 3-4.)

On September 21, 2022, about six months after the indictments, arrest, and search, the government filed a civil complaint against the *in rem* assets pursuant to 18 U.S.C. § 981 (civil forfeiture) and § 982 (criminal forfeiture). See Docket No. 1. The complaint alleged that the *in rem* assets were involved in transactions violating 18 U.S.C. § 1956 and § 1957 (money laundering and engaging in monetary transactions in property derived from specified unlawful activities, respectively), and violating 18 U.S.C. § 1341, § 1343, and § 1344 (mail, wire, and bank fraud). Id. Immediately after the civil complaint was filed, the government moved to stay the proceedings pending resolution of the criminal cases against Gallardo, alleging that "[c]ivil discovery in this matter will adversely affect the prosecution of related criminal cases". (Docket No. 5 at p. 2.) The Court granted the government's motion to stay. (Docket No. 8.)

On July 24, 2024, Gallardo pled guilty to the charges in the criminal indictments, and on February 26, 2025, he was sentenced to a total of 120 months' imprisonment. See Case No. 22-cr-120-1, Docket No. 113, Docket No. 153; Case No. 22-cr-121, Docket No. 83, Docket No. 122. On August 5, 2025, the government moved to vacate the stay on the civil forfeiture case, which was granted. (Docket No. 10, Docket No. 11.) On September 19, 2025, Gallardo filed the current motion to dismiss. (Docket No. 16.)

Gallardo makes four arguments supporting his motion to dismiss. First, he argues that the complaint violates his Fifth Amendment due process rights because the proceedings were initiated and litigated with unreasonable delay. Id. at pp. 2-3. Second, he argues that the complaint fails to meet the pleading requirement in Supplemental Rule G(2)(f), which requires the government to allege sufficiently detailed facts to support a reasonable belief that they will be able to meet their burdens of proof at trial. Id. at p. 3. Third, he argues that the complaint fails to satisfy the statutory requirements of the Civil Asset Forfeiture Reform Act ("CAFRA"). Id. Fourth, he argues that the forfeiture sought by the government is excessive and violates his Eighth Amendment rights. Id. at p. 4. The government objects to each of Gallardo's arguments and alleges that he lacks standing to bring his motion to dismiss. See Docket No. 18.

**III. Discussion**

**A. Standing**

The government argues that Gallardo's arguments need not be addressed because he has not shown standing to challenge the civil complaint. In civil forfeiture actions, a claimant must have both constitutional and statutory standing to challenge a complaint. "An allegation of ownership, coupled with some evidence of ownership, is sufficient to establish constitutional standing to contest a forfeiture." United States v. $20,000 in United States Currency, 589 F. Supp. 3d 240, 249 (D.P.R. 2022) (Besosa, J.) (alterations omitted) (citing United States v. United States Currency, 189 F.3d 28, 35 (1st Cir. 1999)). "Statutory standing is satisfied by simply complying with the procedures and deadlines for filing a claim set out in Supplemental Rule G." Id. (citing United States v. Letter from Alexander Hamilton to the Marquis De Lafayette, 15 F.4th 515, 521 (1st Cir. 2021)) (internal quotation marks omitted).

The Court finds that Gallardo has established constitutional standing. "At the initial stages of intervention, the requirements [for constitutional standing] are not arduous and typically any colorable claim on the defendant property suffices." United States v. $8,440,190.00 in U.S. Currency, 719 F.3d 49, 57 (1st Cir. 2013). Gallardo's motion to dismiss specifically lists

the *in rem* assets (Docket No. 16 at p. 1) and alleges ownership, albeit obliquely. See Docket No. 16 at pp. 4 (requesting the Court to "[o]rder the immediate return of the Defendant's property"); cf. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) ("Our judicial system zealously guards the attempts of pro se litigants on their own behalf. We are required to construe liberally a pro se complaint and may affirm its dismissal only if a plaintiff cannot prove any set of facts entitling him or her to relief."). The fact that the assets were found in his house provides evidence to support his allegation of ownership. The Court considers this evidence sufficient to establish constitutional standing.

As stated previously, statutory standing is satisfied by compliance with the procedures and deadlines for filing a claim set out in Supplemental Rule G. First, a person with a potential interest in the property subject to forfeiture must file a claim in the court where the action is pending. Supplemental Rule G(5)(A)(i). The claim must (a) identify the specific property claimed, (b) identify the claimant and state the claimant's interest in the property, (c) be signed by the claimant under penalty of perjury, and (d) be served on the government attorney. Id. The claim must also be filed within the time indicated in the notice to potential claimants sent by the government under Supplemental Rule G(4)(b). See Supplemental Rule G(5)(a)(ii)(A).

After filing a claim, a claimant must file an answer to the complaint or a motion under Rule 12 within 21 days. Supplemental Rule G(5)(b).

Gallardo never filed a claim *per se*, and instead merely filed his current motion to dismiss. (Docket No. 16.) Nonetheless, the Court construes Gallardo's motion to dismiss to include his claim under Supplemental Rule G(5)(a). See United States v. $47,000 in United States Currency, No. 19-CV-00551-JPG-RJD, 2019 U.S. Dist. LEXIS 175407, at *3 (S.D. Ill. Oct. 9, 2019) ("Claims need not be made in any particular form.") Gallardo's motion to dismiss was submitted within the deadline specified in the government's notice of forfeiture action – the notice provides a deadline of sixty days from the first day of publication, August 8, 2025, and Gallardo filed his motion on September 19, 2025. See Docket No. 19 at p. 1; Docket No. 16. The motion also specifically lists the property, identifies Gallardo's interest, and was served on the government attorney. And although Gallardo's signature does not appear to have been made under penalty of perjury, see Docket No. 16 at p. 4, the Court will overlook this omission for three reasons. First, the government does not challenge Gallardo's statutory standing. See Docket No. 18 at p. 3. Second, the First Circuit Court of Appeals has, in the context of default judgments, stated a preference for "resolving

cases on the merits and avoiding harsh or unfair results." Universitas Educ., LLC v. Granderson, 98 F.4th 357, 377 (1st Cir. 2024) (citing Remexcel Managerial Consultants, Inc. v. Arlequin, 583 F.3d 45, 51 (1st Cir. 2009)). And third, "[w]hile constitutional standing is mandatory, statutory standing is not a [prerequisite] to a court's power to adjudicate a case." Medina-Rodríguez v. $3,072,266.59 in United States Currency, 471 F. Supp. 3d 465, 472 (D.P.R. 2020) (Besosa, J.) (citing United States v. Catalá, 870 F.3d 6, 10 (1st Cir. 2017) (internal quotation marks omitted). Accordingly, the Court will proceed to analyze the merits of Gallardo's motion.

**B. Unreasonable Delay**

Gallardo's first argument in support of his motion to dismiss is that the government's delay in initiating and litigating the forfeiture action violates his Fifth Amendment due process rights. The Court disagrees.

When evaluating whether delays in civil forfeiture actions violate a claimant's due process rights, courts apply the four-part test developed in Barker v. Wingo, 407 U.S. 514 (1972). See United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency, 461 U.S. 555, 564-70 (1983). The Barker test requires weighing the "[l]ength of delay, the reason for the delay, the [claimant]'s assertion of his right, and

prejudice to the [claimant].” Barker, 407 U.S. at 530. In addition to considering delays in filing forfeiture complaints after assets have been seized, “courts have routinely recognized that the protection of due process extends also to the conduct of the action once it has been filed.” $170,000 in United States Currency, 2024 U.S. Dist. LEXIS 104957, at *12 (internal quotation marks omitted). On the other hand, “delays after filing a complaint, where there is no prejudice to the claimant, do not violate due process.” $20,000 in United States Currency, 589 F. Supp. 3d at 260 (citing United States v. Zorrilla-Echevarría, 671 F.3d 1, 12 (1st Cir. 2011)). And, depending on the circumstances, a pending criminal proceeding may provide a valid reason for delay. See $170,000 in United States Currency, 2024 U.S. Dist. LEXIS 104957, at *15-17; 18 U.S.C. § 981(g)(1) (“Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.”).

Gallardo’s arrest and the seizure of the *in rem* assets occurred on the same day in March 2022. See supra pp. 2-3. The filing of the civil forfeiture complaint, and the government’s request to stay the forfeiture case pending Gallardo’s criminal proceedings, both occurred roughly six months later. Gallardo

pled guilty to his criminal charges on July 24, 2024, and he was sentenced on February 26, 2025. The civil forfeiture stay was vacated on August 5, 2025 – just over six months after he was sentenced. In all, there was a delay of just under three years from the seizure of the *in rem* assets to vacating the stay.

The Court finds that the delay in prosecuting the civil forfeiture case does not violate Gallardo's due process rights. The total length of the delay was not excessive given that most of the delay took place while the case was under a valid stay during the criminal proceedings. Although the government does not provide a reason why it took six months to file the complaint after the *in rem* assets were seized, longer delays have survived due process scrutiny. See $20,000 in United States Currency, 589 F. Supp. 3d at 260-61 (finding a nine-month delay between seizure of property and filing the civil forfeiture complaint consistent with due process). With respect to the third Barker factor, Gallardo timely asserted his right to the property, which weighs in favor of his due process argument. See supra p. 6. With respect to the final factor, the Court finds that Gallardo was not substantially prejudiced by the delay. "The primary inquiry here is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." Eight Thousand Eight Hundred & Fifty Dollars

($8,850) in United States Currency, 461 U.S. at 569. Gallardo claims prejudice in the form of loss of use of the property, impairment of defenses, and reputational harm, but he does not explain his reasoning. See Docket No. 16 at pp. 2-3. Without an explanation, the Court does not consider the delay presumptively prejudicial. See $20,000 in United States Currency, 589 F. Supp. 3d at 261 (to find prejudice based on deprivation of property while waiting for the case to proceed requires "much longer stretches of time [than nine months] before the forfeiture proceedings were initiated"); $170,000 in United States Currency, 2024 U.S. Dist. LEXIS 104957, at *18-19 (length of the delay not enough to establish prejudice when the claimant cannot specifically articulate prejudice). Accordingly, weighing the Barker factors, the Court finds that the delay does not violate Gallardo's due process rights.

**C. Adequacy of Pleading**

Gallardo's second and third arguments concern the specificity of the government's complaint.[1] He argues that the complaint fails to state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its

[1] This section covers both Gallardo's second and third arguments, which the Court reads as equivalent. The government's pleading burden is reflected in both 18 U.S.C. § 983 and in Supplemental Rule G, so Gallardo's second and third arguments are not distinct.

burden of proof at trial that there was a substantial connection between the property and the offense. See Docket No. 16 at pp. 3-4; Supplemental Rule G(2)(f); 18 U.S.C. § 983(c)(1), (3). The Court disagrees.

"Pursuant to Supplemental Rule G(2)(f), a forfeiture complaint must state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." $20,000 in United States Currency, 589 F. Supp. 3d at 252 (citing Supplemental Rule G(2)(f)) (internal quotation marks omitted). "[T]he burden of proof is on the [g]overnment to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). "[I]f the [g]overnment's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the [g]overnment shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). "[T]he pleading standard under [Supplemental Rule] G(8)(b) is higher than the standard for Fed.

R. Civ. P. 8(a)."[2] United States v. $2,200,000 in United States Currency, Civil No. ELH-12-3501, 2014 U.S. Dist. LEXIS 39807, at *18 (D. Md. Mar. 26, 2014). But the "government does not have to fully prove its case to meet the pleading requirement[] . . . ." $170,000 in United States Currency, 2024 U.S. Dist. LEXIS 104957, at *28 (quoting United States v. $15,860 in U.S. Currency, 962 F. Supp. 2d 835, 839 (D. Md. 2013)). And "[t]he allegations in the complaint need not stand alone[] when a supporting affidavit details the factual allegations underlying the complaint." $20,000 in United States Currency, 589 F. Supp. 3d at 252 (citing United States v. 4492 S. Livonia Rd., 889 F.2d 1258, 1266 (2d Cir. 1989)) (internal quotation marks omitted).

In this case, the complaint was accompanied by an unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746, by HSI Special Agent Milton R. Miranda, who described the March 2024 search of Gallardo's home in which the *in rem* assets were seized. See Docket No. 3. Agent Miranda explains that Gallardo provided his home address on applications for P.O. boxes which were used to receive mail in furtherance of the schemes. Id. at

[2] The pleading standard under Fed. R. Civ. P. 8(a) requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

p. 5. Individuals for whom Gallardo submitted fraudulent VAWA petitions reported going to his house for meetings and making payments, which were sometimes made in cash. Id. at pp. 4-5. Agent Miranda also explains how Gallardo used mobile deposit applications on mobile devices to deposit checks from the fraud victims into his bank account. Id. at p. 8. Mobile devices were also used to communicate with and execute peer-to-peer cash exchanges via Venmo, PayPal, and ATH Movil with individual victims of the second scheme. Id.

The Court finds that these allegations demonstrate a reasonable probability of demonstrating that the *in rem* assets are related to Gallardo's criminal enterprises. The fact that the *in rem* assets were found in his home, along with the allegations that Gallardo ran his schemes from his home and frequently used both cash and mobile devices in furtherance of these criminal enterprises, creates a reasonable probability that the *in rem* assets are linked. The amount of cash and the number of mobile phones, both unusually large, also suggest a link between the *in rem* assets and Gallardo's criminal activity. Although these latter facts may also be consistent with a different explanation, such as Gallardo's work in the construction industry,[3] the government need

[3] See Case No. 22-cr-121, Docket No. 104, at p. 30.

not prove its case against competing theories at this stage in the proceedings. All that is required is to show a reasonable probability that the *in rem* assets are connected to criminal activity, which the allegations in the complaint and unsworn affidavit successfully demonstrate. Accordingly, the government has met its burden to survive a motion to dismiss on Gallardo's specificity argument.

**D. Excessive Forfeiture**

Gallardo's fourth argument is that forfeiture of the *in rem* assets is excessive and unreasonable in violation of his Eighth Amendment rights. The Court finds that this argument is premature at the motion to dismiss stage. Under Supplemental Rule G(8)(e), a claimant is allowed "to seek to mitigate a forfeiture under the Excessive Fines Clause of the Eighth Amendment by motion for summary judgment or by motion made after entry of a forfeiture judgment if: (i) the claimant has pleaded the defense under Rule 8; and (ii) the parties have had the opportunity to conduct civil discovery on the defense." Supplemental Rule G(8)(e). Because civil discovery has not yet been conducted, dismissal of the complaint based on Gallardo's Eighth Amendment argument would be premature. See $170,000 in United States Currency, 2024 U.S. Dist. LEXIS 104957, at *32 (Eighth Amendment challenge to forfeiture is premature before civil discovery has taken place); Medina-

Rodríguez, 471 F. Supp. 3d at 481 (same). Accordingly, Gallardo's fourth argument does not provide grounds to dismiss the complaint at this stage of the proceedings.

**E. Request for Evidentiary Hearing**

Last, as an alternative to granting his motion to dismiss the complaint, Gallardo requests the Court to hold an evidentiary hearing. At the moment, however, there are no factual disputes for which an evidentiary hearing would be required to resolve. The Supplemental Rules provide that an evidentiary hearing may be held to resolve factual disputes regarding claimant standing, but in this case, the government has not controverted Gallardo's claim of ownership of the *in rem* assets, so an evidentiary hearing on standing is unnecessary. See Supplemental Rule G(8)(c); supra pp. 5-8. Whether other factual disputes will emerge during discovery remains to be seen. Accordingly, the Court finds that scheduling an evidentiary hearing is not necessary at this time.

**V. Conclusion**

For the above reasons, Gallardo's motion to dismiss and request for evidentiary hearing is **DENIED.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, November 20, 2025.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE